IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JAMIE MICHELLE REYNOLDS                                    PLAINTIFF


v.                           Case No. 4:11-CV-04006


RON STOVALL, Individually and in his
Official Capacity as Sheriff of Miller County,
Arkansas                                                   DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendant Ron Stovall. (ECF

No. 15). Plaintiff Jamie Reynolds has filed a response. (ECF No. 20). The Court finds the matter ripe

for consideration.

## BACKGROUND

Miller County employed Plaintiff in the Circuit Judge's office from December 29, 2008,

through June 24, 2009, and again in the Sheriff's Department from September 21, 2009, through

May 24, 2010, Plaintiff's date of termination. Defendant states that the Sheriff's Department hired

Plaintiff as a 'detention deputy' on September 21, 2009. Plaintiff was apparently needed to serve the

role of an office clerk, however, because the Sheriff's Department was only allowed one designated

clerk position—which was filled at the time of Plaintiff's hiring—Plaintiff was designated as a

detention deputy but performed office clerk duties. Plaintiff argues that she was in fact hired as an

office clerk.

Plaintiff states that Defendant denied her a pay raise on November 30, 2009. Plaintiff's job

title was changed to Office Clerk on January 4, 2010. On January 17, 2010, Plaintiff took a paid

holiday for her birthday despite not accruing the requisite year of service. For the January 23, 2010

pay period, Plaintiff changed her start date from September 21, 2009 to December 29, 2008, and took ten (10) hours of sick leave. She also took another nine (9) hours between February 20, 2010 and March 5, 2010. On March 3, 2010, Plaintiff was involved in an off-duty incident in which she filed a written police report against her boyfriend, a state trooper. On March 5, 2010, Defendant placed Plaintiff on paid administrative leave for three days so an internal investigation of the incident could be conducted. On March 9, 2010, Defendant placed Plaintiff on disciplinary probation for one year and reassigned her to a detention deputy position.   Plaintiff took another twenty-four (24) hours of sick leave between March 20, 2010 and April 2, 2010. She took eight (8) more hours of sick leave between April 3, 2010 and April 16, 2010. On April 20, 2010, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge against Defendant in which she alleged unequal pay on account of her gender. On April 24, 2010, an administrative assistant sent Plaintiff's supervisors a memo containing mention of alleged improper use of sick leave. Because Plaintiff had allegedly used all accrued sick leave and still had not returned to work, Defendant placed her on inactive employee status on May 11, 2010.

On May 13, 2010, Plaintiff visited a physician regarding alleged depression symptoms. Plaintiff asserted that she was prescribed medication. The physician also issued a note releasing Plaintiff from work for two weeks, until May 27. She faxed the note to Defendant on May 14, with a notation referencing leave under the Family and Medical Leave Act. On May 24, 2010, supervisors met with Plaintiff and issued a termination letter. The letter mentioned excessive leave, alteration of time sheets, and insubordinate behavior as reasons for termination.

Plaintiff filed a complaint in this Court on January 12, 2011, naming Miller County Sheriff Ron Stovall as a defendant both individually and officially. Plaintiff alleges that Defendant violated the Americans with Disabilities Act of 1990 ("ADA"), the Family and Medical Leave Act of 1993

2

("FLMA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Arkansas Civil Rights Act of 1993 ("ACRA"), 42 U.S.C. § 1983, and the Federal and State Equal Pay Acts. Plaintiff alleges she has suffered harm in the form of lost wages, lost benefits, medical bills, and emotional distress. She seeks compensatory and punitive damages, as well as reinstatement and other equitable relief.

<u>STANDARD OF REVIEW</u>

The standard of review for summary judgment is well established.  The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995).  The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir.1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir.1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank*, 92

3

F.3d 743, 747 (8th Cir.1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.*  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of LeSueur*, 47 F.3d at 957.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. at 256.

<u>DISCUSSION</u>

*A. FMLA Claims*

Employers are prohibited from discriminating against employees who exercise their rights under the FMLA.  29 U.S.C. § 2615(a)(2). An eligible employee may maintain two types of claims: (1) interference claims "in which the employee alleges that an employer denied or interfered with [her] substantive rights under the FMLA" and (2) retaliation claims "in which the employee alleges that the employer discriminated against [her] for exercising [her] FMLA rights."  *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006).  Plaintiff appears to raise both types of claims in her complaint. Defendant argues that the claims should fail because Plaintiff is not an eligible employee; she has failed to demonstrate a serious health condition; she failed to give appropriate notice of the need to be absent from work; and she has not shown that absence was the only factor in Defendant's decision to terminate employment. The Court will address those arguments in turn.

<u>a. eligibility</u>

The FMLA entitles eligible employees to a total of twelve (12) workweeks of leave during any 12-month period of employment. 29 U.S.C. § 2612. To obtain eligibility, the employee must have been employed by the employer for at least 12 months and have provided at least 1,250 hours

of service during the preceding 12 month period. *Sepe v. McDonnell Douglas Corp.*, 176 F.3d 1113, 1115 (8th Cir. 1999) (citing 29 U.S.C. § 2611(2)(A)(i)-(ii)).

      Payroll records provided by the County Clerk's office show that the Miller County Sheriff's Department employed Plaintiff from September 21, 2009 until May 27, 2010, or approximately 8 months. (ECF No. 19, Ex. 12). The records also show that the Miller County Circuit Judge's office employed her for approximately 6 months, from December 29, 2008 until June 24, 2009. *Id.* Payroll records for both positions provide "Miller County" as the name of the employer, and regulations provide that the required 12-month period of employment need not be consecutive. *See* 29 C.F.R. § 825.110(b) ("The 12 months of an employee must have been employed by the employer need not be consecutive months[.]"). The pay check stubs also appear to show a full time salary. Summary judgment is not appropriate as to eligibility because Plaintiff has produced sufficient evidence that Miller County employed her for the requisite period.

      <u>b. serious health condition</u>

      The FMLA requires that an employee's absence be "[due to] a serious health condition that makes [her] unable to perform the functions of the position[.]" 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is "'any illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider.'" *Murphy v. FedEx Nat. LTL, Inc.*, 618 F.3d 893, 898 (8th Cir. 2010) (quoting 29 U.S.C. § 2611(11)). The Eighth Circuit has established a three-part test to determine whether a plaintiff possesses a "serious health condition" under the FMLA—(1) the plaintiff had a period of incapacity requiring absence from work; (2) the incapacity exceeded three consecutive days; and (3) the plaintiff received continuing treatment by a health care provider during the absence. *Rankin v. Seagate Technologies, Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001). Because a serious health condition is a prerequisite for FMLA leave, summary judgment is

proper "if [a plaintiff] fails[s] to create a genuine [dispute] of material fact as to any of these elements." *Id.; Rask v. Fresenius Medical Care North America*, 509 F.3d 466, 472 (8th Cir. 2007).

A genuine dispute exists as to whether Plaintiff had a serious health condition beginning on May 13, 2010, when Plaintiff's physician issued a two week work release. Plaintiff affirms under oath that she visited a physician, who prescribed her medication and released her from work for two weeks, between May 13 and May 27 of 2010. Plaintiff has also produced a copy of her physician's work release note. *See* ECF No. 19, Ex. 2 at 14. There is enough evidence to suggest that Plaintiff's absences starting May 13 and ending May 24, the point of termination, were the result of a serious health condition because the incapacity lasted longer than three days; Plaintiff sought treatment from a physician; and the physician provided continuing treatment during the incapacity in the form of prescribed depression medication.[1]

c. notice

An FMLA interference claim requires the employee to provide the employer notice of the need for FMLA leave. *Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 785 (8th Cir. 2009) (citation and quotation omitted). An employee "must do more than merely call in sick to trigger an employer's duties under the FMLA." *Id.* An employer is put on notice when provided with enough information to reasonably believe that the employee "may be in need of FMLA leave." *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999). An employee need not mention the statute by name, but must let the employer know that the absence is distinguishable from a run of the mill sick day.

---

[1] The Court finds that no genuine dispute exists as to whether Plaintiff's sick leave absences before the May 13 work release period were the result of a serious health condition as defined in the FMLA. The Court is aware of no record indicating that these absences accompanied treatment by a healthcare provider or involved a regimen of continued treatment. Accordingly, the sporadic absences occurring between January 23, 2010 and April 16, 2010, are not covered by the FMLA.

*Rask*, 509 F.3d at 472. The employee should let the employer know the reason for the leave and when they will return to work. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 991 (8th Cir. 2005).

Here, Plaintiff affirms that she faxed her work release note to Miller County on May 14, 2010, the day following her physician's visit. The note is signed by Ronald D. Rush, M.D., and indicates that Plaintiff should return to work on May 27, 2010. The fax cover sheet indicated that the absence was under FMLA leave. Plaintiff further affirms that she had previously told two supervisors that she suffered from depression. In the Court's view, summary judgment is improper because a genuine dispute exists as to whether Miller County was put on notice of Plaintiff's invocation of FMLA rights.

d. retaliation theory

Plaintiff asserts that Defendant retaliated against her by terminating her on May 24, 2010, during a period of FMLA protected leave. FMLA retaliation claims operate under the *McDonnell Douglas* burden-shifting framework, where the plaintiff must show 1) she engaged in protected conduct; 2) she suffered a materially adverse employment action; and 3) the materially adverse action was causally linked to the protected conduct. *Blakley v. Schlumberger Technology Corp.*, 648 F.3d 921, 934 (8th Cir. 2011) (quoting *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011)). If established, the burden then shifts to the employer, who must show a non-discriminatory reason for the adverse action. *Id.* The plaintiff must then prove that the employer's stated reason was merely pretext. *Id.* Pretext can be established in a number of ways, including "by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). Put simply, to survive a motion for summary judgment, Plaintiff must show a genuine dispute about whether her termination was motivated by discriminatory intent.

*Blakely*, 648 F.3d at 934.

As noted, genuine disputes exist as to whether Plaintiff exercised her right to use FMLA-protected leave; and she presumably suffered adverse employment action in that she was terminated. The Court assumes *arguendo* that because Defendant terminated Plaintiff during a potentially FMLA-protected absence period, she can raise an inference of a causal link. Upon review, however, the Court simply cannot agree that a genuine dispute exists as to whether Plaintiff's termination was motivated by her exercise of leave potentially protected by the FMLA.

In its termination letter, issued May 24, 2010, Defendant listed several policies that Plaintiff violated, none of which concerned her use of FMLA leave beginning May 13, 2010. Defendant's stated reasons for Plaintiff's dismissal included time sheet alteration, excessive absences not covered by FMLA, and violations of internal policies relating to her filing of a potentially false police report. Specifically, Defendant conducted an investigation of Plaintiff's encounter with police and found that her actions likely constituted the filing of a false police report and "were consistent with criminal trespass disorderly conduct[.]" (ECF No. 16, Ex. 5). She was placed on disciplinary probation and reassigned as a detention deputy. As for Plaintiff's excessive absences, evidence suggests she violated Miller County policy concerning the usage of sick leave. Miller County awards 48 hours of sick leave to an employee with at least 6 months of continuous service. Plaintiff took paid sick leave the week of January 23, 2010 and February 20, 2010 despite not having accrued enough service time. Plaintiff continued to take sick leave through March and April, and evidence suggests that she altered the start date on her payroll forms without the permission of a supervisor. Further, Plaintiff may have violated policy as outlined in the employee handbook by not properly reporting the reasons for her use of sick leave to the appropriate supervisor. While the fact that Plaintiff's termination arose during a period that may have been FMLA-protected, the Court is not convinced that one could

8

reasonably infer that the use of such leave constituted a motivating reason for the dismissal. Plaintiff has not provided the Court with evidence to create a fact issue as to whether the use of such leave was a motivating force behind Defendant's adverse employment action. Accordingly, Defendant's motion for summary judgment as to Plaintiff's FMLA retaliation claim should be granted.

e. interference theory

For similar reasons, no genuine dispute exists as to Plaintiff's claim that Defendant interfered with her FMLA rights by failing to provide her notice of FMLA rights within five days of taking leave and by failing to reinstate her to the same position upon return from FMLA leave. The *McDonnell Douglas* burden-shifting analysis does not apply to FMLA interference claims, and an employee can recover only "if [she] was denied substantive rights under the FMLA for a reason connected with her FMLA leave." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050-51 (8th Cir. 2006). The mere fact that Plaintiff was discharged during FMLA leave "by no means demands an employer be held strictly liable for violating the FMLA[.]" *Id.* at 1051. An employee cannot recover under an interference theory if the "employer's reason for dismissal is insufficiently related to FMLA leave." *Id.* "An employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave." *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010).

Here, the Court finds no fact question as to whether Defendant's termination decision was adequately related to Plaintiff's use of potentially FMLA-protected leave. Defendant's reasons for Plaintiff's termination—the abuse of non-FMLA sick leave, the alteration of time sheets, and the failure to follow Miller County policy—provides conclusive support for the contention that Defendant would have terminated Plaintiff's employment regardless of her extended leave beginning May 13, 2010. Accordingly, the Court finds that Plaintiff's interference claim does not present a

9

dispute sufficient enough for a jury to decide. Therefore, Defendant's motion for summary judgment as to the FMLA interference claims should be granted.

*B. Equal Pay Claims*

Plaintiff argues that when Defendant transferred her to a detention deputy position on March 9, 2010, he did so at a lower pay rate than that of other male deputies. To establish a prima facie burden under the Equal Pay Act, the plaintiff must show that her employer paid male employees higher wages for jobs "requir[ing] equal skill, effort, and responsibility, and which are performed under similar working conditions." *Berg v. Norand Corp.*, 169 F.3d 1140, 1145 (8th Cir. 1999) (quoting 29 U.S.C. § 206(d)(1)(1994)). Similarly, under Arkansas' wage discrimination law, "[e]very employer in the state shall pay employees equal compensation for equal services, and no employer shall discriminate against any employee in the matter of wages or compensation solely on the basis of [] sex[.]" Ark. Code Ann. § 11-4-601.

Due to staffing limitations, Defendant hired Plaintiff in September 21, 2009 with the title of Detention Deputy at a salary of $21,400 per year—the entry-level rate for that position. Plaintiff was a detention deputy in name only; she performed the work of an office clerk. On November 25, 2009, Defendant increased Plaintiff's salary to $22,365 per year, the maximum rate for a detention deputy. On January 4, 2010, the office clerk position opened, and Plaintiff willingly accepted reassignment to that position at a lower salary of $21,789 per year. On March 9, 2010, Brenda Neimeyer replaced Plaintiff as office clerk, and Plaintiff was placed in a detention deputy position with an unchanged rate of pay.

Plaintiff apparently argues that Defendant paid "numerous males" who were detention deputies more than her. In support, however, she cites only her own conclusory statements. Upon transfer to the detention deputy position on March 9, 2010, Plaintiff essentially functioned as an

entry-level deputy, and she has not cited factual evidence that other, similarly situated male detention deputies were paid more than her. Plaintiff earned $21,789 in the position—a rate above the entry-level $21,400 per year salary—notwithstanding her complete lack of experience as a detention deputy.  Plaintiff simply cannot establish a prima facie case of unequal pay based on the record before the Court. Accordingly, Defendant's motion for summary judgment should be granted as to Plaintiff's unequal pay claims.

*C. Disability Claims*

Plaintiff argues that her depression symptoms constituted a disability under the ADA, and that Defendant unlawfully denied her a reasonable workplace accommodation by not allowing her a two week break from work. Plaintiff further asserts that she had mentioned her depression to co-workers and that she was entitled to an altered work schedule.

Absent direct evidence, a plaintiff seeking redress under the ADA must first establish "(1) an ADA-qualifying disability; (2) qualifications to perform the essential functions of her position with or without reasonable accommodation; and (3) an adverse employment action due to her disability." *Norman v. Union Pacific R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010). An ADA-qualifying disability is a "physical or mental impairment that substantially limits one or more of the major life activities of an individual, a record of such impairment, or being regarded as having such an impairment." *Id.*

Plaintiff argues that her depression caused anxiety and negatively affected sleep and concentration. Apart from her own deposition testimony, however, Plaintiff offers little evidence of an impairment that meets the statutory definition of disability under the ADA. A plaintiff's own self-serving statements about an alleged disability cannot serve as the basis for surviving a summary judgment motion. More evidence is required. *See Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613,

616 (8th Cir. 1997) (district court did not err in rejecting plaintiff's conclusory testimony in determining whether alleged impairment substantially limited a major life activity).

Here, Plaintiff's two week work release note made no mention of whether her depression limited, in any sustained way, her ability to sleep, concentrate, or perform any other major life activity. In fact, the note indicated that Plaintiff would need no restrictions upon a return from work. Plaintiff affirmed in deposition testimony that she has visited a physician only once concerning her depression and that she currently takes no medication. Plaintiff may have mentioned to co-workers that she felt depressed, but the Court fails to see how that evidences the substantial limitation of major life activities. Plaintiff has failed to establish that her impairment significantly restricted her ability to perform major life activities when compared to the rest of the population. The Court finds that no genuine fact question exists and that Defendant's motion for summary judgment as to Plaintiff's ADA claims should be granted.

 D. Title VII and ACRA Retaliation

Plaintiff argues that her transfer to a detention deputy position and subsequent termination were the result of her gender and because she engaged in the protected acts of filing a police report against her then-boyfriend, a state trooper, and making an EEOC charge against Defendant.

Retaliation under Title VII requires the plaintiff to show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the exercise of protected activity and the adverse action.[2] *Eliserio v. United Steelworkers of America Local 310*, 398 F.3d 1071, 1078-9 (8th Cir. 2005). If she can establish a prima facie case, a

---

[2] The Court incorporates Plaintiff's ACRA claim into its Title VII analysis. *See Wallace v. Sparks Health Sys.*, 415 F.3d 853, 861 (8th Cir. 2005) ("To overcome summary judgment on a retaliation claim under ACRA, a plaintiff must make the same showing as is required on an analogous claim under Title VII.").

presumption of discrimination arises that the defendant may rebut by "advancing a legitimate reason for its challenged behavior." *Id.* at 1078. The plaintiff may refute the defendant's reason through evidence of pretext. *Id.*

Plaintiff clearly suffered an adverse employment action in that she was fired; but as to the police report, the Court finds that Plaintiff's filing of such a report is not protected activity under Title VII because Plaintiff has failed to demonstrate a reasonable belief that the subject matter of the police report—in this case a domestic matter unrelated to Plaintiff's employment with the Miller County Sheriff's Department—violated Title VII. *See, e.g., Weiland v. El Kram, Inc.*, 233 F.Supp.2d 1142, (N.D. Iowa 2002) (the filing of a police report is not protected activity for purposes of Title VII retaliation claim unless plaintiff reasonably believed substance of report concerned activity prohibited by Title VII) (citing *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 714 (8th Cir. 2000)). Accordingly, Defendant's motion for summary judgment should be granted as to Plaintiff's Title VII retaliation claims concerning the police report.

The Court accepts that Plaintiff filed an EEOC charge against Defendant on April 20, 2010, alleging pay discrimination. Filing an EEOC charge constitutes protected activity regardless of merit, and Plaintiff suffered adverse employment action because she was terminated. *See Wallace v. Sparks Health System*, 415 F.3d 853, 858 (8th Cir. 2005) (filing a gender-based EEOC complaint is protected activity under Title VII). The Court will further assume that the timing of the termination, one month after the EEOC filing, provides a temporal proximity close enough to raise a fact question as to causality.

As proof of pretext, Plaintiff cites the timing of the termination, as well as Woodson Giles, a Miller County Sheriff's Department employee who was involved in a domestic disturbance but not fired. The Court is unpersuaded that a genuine dispute as to pretext exists. A temporal connection

13

between the date an employee files an EEOC charge and the termination date is certainly relevant evidence, but it is undercut in this case for several reasons—the termination occurred over a month later, weakening a temporal inference of retaliation; Plaintiff also continued to use sick leave in an unauthorized manner during the same time period; the office clerk alerted Plaintiff's supervisor of sick leave abuse by way of an April 24, 2010 memo; and Plaintiff's supervisor placed her on inactive employee status due to excessive sick leave use on May 11, 2010. Further, Woodson Giles is not a similarly situated employee. While he was placed on 3-day paid leave, his apparent violation involved unauthorized use of Miller County equipment and not possibly filing a false police report and committing criminal trespass. The summary judgment record reflects that a supervisor reviewed Giles' infraction, and the Court possesses no evidence that the incident was comparable in severity to Plaintiff's. *See Wheeler v. Aventis Pharm.*, 360 F.3d 853, 858 (8th Cir. 2004) (the burden for establishing a similarly situated employee at the pretext stage is high), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). The facts do not present a genuine dispute under a Title VII or ACRA retaliation theory. Therefore, Defendant's motion for summary judgment as to those claims should be granted.

*E. Title VII and ACRA Gender Discrimination*

Plaintiff likewise argues that her transfer and termination resulted because she is female. Both Title VII and ACRA gender discrimination claims are analyzed under the *McDonnell Douglas* framework. *See Crone v. United Oarcel Serv., Inc.*, 301 F.3d 942, 945 (8th Cir. 2002) ("The Arkansas Supreme Court looks to decisions interpreting the federal civil rights laws in analyzing gender discrimination claims under the Arkansas Civil Rights Act[.]") (citing *Flentje v. First Nat'l Bank*, 340 Ark. 563, 570-72, 11 S.W.3d 531, 537 (2000)). Plaintiff must meet her prima facie burden by showing "(1) she is a member of a protect group; (2) that she met applicable job qualifications;

14

(3) that she [suffered an adverse employment action]; and (4) that the [adverse action] occurred under circumstances that create an inference of unlawful discrimination." *Rorie v. United Parcel Service, Inc.*, 151 F.3d 757, 760 (8th Cir. 1998). If met, the burden shifts to Defendant to articulate a non-discriminatory reason for the adverse employment action. If Defendant can articulate such a reason, the burden shifts back to Plaintiff to show pretext.

Upon consideration, the Court finds that Plaintiff has failed to evidence a genuine dispute as to whether the adverse employment action was pretextual. For reasons already mentioned, namely that Plaintiff's termination and transfer were the result of legitimate, non-discriminatory policy violations, the Court considers summary judgment appropriate.

*F. Constitutional Claims, Qualified Immunity*

In Count III of the complaint, Plaintiff alleges that Defendant "acted under color of state law" in depriving her "clearly established right to access of the courts, in violation of the Federal and State Constitutions." (ECF No. 1 at 4). Plaintiff also mentions that Defendant deprived her of her "right to free speech, and to remonstrate[.]" *Id.* In her response to Defendant's summary judgment motion, Plaintiff also notes that she suffered unconstitutional gender discrimination. These claims are presumably brought pursuant to 42 U.S.C. § 1983. The complaint names Defendant in his individual and official capacities. On page 15 of Plaintiff's brief, however, she appears to non-suit any claims brought under 42 U.S.C. § 1983. It is not clear whether Plaintiff desires to abandon only those constitutional claims brought against Defendant in his official capacity or whether she is discarding the claims altogether. The Court will treat the matter as though only the official capacity constitutional claims are discarded.

To the extent that Plaintiff has alleged constitutional violations against Defendant under 42 U.S.C. § 1983, Defendant argues that he is entitled to qualified immunity. "Qualified immunity

15

shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). The Court examines (1) "whether the facts that a plaintiff has alleged. . . make out a violation of a constitutional right" and (2) whether the constitutional right "was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The analysis can begin with either factor. *Id.* at 236. In this case, the record evidences no triable dispute as to whether a constitutional violation occurred.

Plaintiff vaguely alleges that Defendant violated her "right to free speech" as it relates to filing a police report and EEOC charge. The Court presumes Plaintiff argues that Defendant infringed on her right to do these things by either transferring her to a detention deputy position or by terminating her employment. To prevail on a free speech retaliation claim, the plaintiff must show that she "engaged in protected activity, and that this activity was a substantial or motivating factor in [her] employer's decision to terminate [her]." *McCullough v. University of Arkansas for Medical Sciences*, 559 F.3d 855, 865 (8th Cir. 2009). Whether the speech could be "fairly characterized as constituting speech on a matter of public concern" determines whether it is protected. *Connick v. Myers*, 461 U.S. 138, 146 (1983). Speech motivated primarily by private concerns is not protected. *See, e.g., Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007) ("When speech relates both to an employee's private interests as well as matters of public concern, the speech is protected if it is primarily motivated by public concern."); *McCullough*, 559 F.3d at 866 (finding that speech is unprotected if motivated primarily by private concerns).

Both the police report and EEOC charge are not protected speech because they primarily concerned private matters. The record supports no conclusion that Plaintiff's EEOC charge of wage

discrimination was disseminated publicly or that the matter was anything other than an entirely internal employment matter. The EEOC charge itself is brief and does not appear to allege an organization-wide policy of pay discrimination. The charge appears to be an individualized, private complaint concerning Plaintiff's work situation. In the Court's view, Plaintiff possessed a self-interest in filing the complaint, rather than a public one. The police report likewise concerns a private matter. The domestic disturbance incident occurred away from work, and the matter involved a personal, private relationship. These factors cut against characterizing the speech as protected. *See, e.g., Houskins v. Sheahan*, 549 F.3d 480, 491 (7th Cir. 2008) (employee's filing of police report not protected speech because it was nothing more than a "personal grievance"). Neither the police report nor the EEOC charge were intended to raise matters of public concern. The Court finds no genuine dispute as to whether a free speech violation occurred; and since no constitutional violation occurred, "there is no necessity for further inquiries concerning qualified immunity." *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756 (8th Cir. 2003). Defendant's motion for summary judgment as to Plaintiff's free speech claims should therefore be granted.

The Court further finds that Plaintiff's gender-based constitutional claim presents no jury-worthy fact questions. An intentional gender discrimination claim brought under § 1983 follows the *McDonnell Douglas* burden shifting framework. *Id.* That framework has already been discussed and the Court finds that no genuine dispute exists as to pretext for reasons mentioned. Accordingly, Defendant's motion for summary judgment should be granted.

The Court also recognizes remaining, vaguely pled claims brought under the Arkansas Constitution. Having dismissed all other claims, the Court declines to continue exercising supplemental jurisdiction over those claims. 28 U.S.C. §1367(c)(3); *D.J.M. ex rel. D.M. v. Hannibal Pub. Sch. Dist. No. 60*, 647 F.3d 754, 767 (8th Cir. 2011). The period of limitations on those claims

17

is tolled under 28 U.S.C. § 1367(d) for 30 days after entry of this judgment, unless Arkansas gives a longer tolling period.

<u>CONCLUSION</u>

Accordingly, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 15) should be and hereby is **GRANTED**. Plaintiff's claims brought under the Arkansas Constitution are **DISMISSED WITHOUT PREJUDICE**. All of Plaintiff's remaining claims are **DISMISSED WITH PREJUDICE.** A judgment of even date, consistent with this opinion, will be issued.

IT IS SO ORDERED, on this 10th day of April, 2012.

/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge

18